UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RAUL TECSON,

    Plaintiff,

v.                                                                                                  Case No. 3:21-cv-855-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

    Defendant.

_____/

**MEMORANDUM OPINON AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision regarding his application for a period of disability, and disability insurance benefits ("DIB"). Following an administrative hearing held on February 24, 2021, the assigned administrative law judge ("ALJ") issued a decision, finding Plaintiff not disabled from May 1, 2018, the alleged disability onset date, through March 8, 2021, the date of the decision.[2] (Tr. 15-27.) Based on a review of the record, the briefs, and the applicable

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 15.)

[2] Plaintiff had to establish disability on or before December 23, 2023, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 15.)

law, the Commissioner's decision is due to be **REVERSED and REMANDED**.

## I. Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); accord *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

### A. Issues on Appeal

Plaintiff raises three issues on appeal. First, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence. (Doc. 17 at 3.) Specifically, Plaintiff challenges the ALJ's consideration of Drs. Buckley, Knox, Madkaiker, and the State agency reviewing consultants' opinions. (*Id.* at 3-12.) As to the ALJ's consideration of Dr. Buckley, Plaintiff argues, *inter alia*, that "it is unclear why the ALJ found the opinion persuasive, or even relevant, given Plaintiff's alleged onset date was May 1, 2018—more than *six years* after Dr. Buckley's examination and opinion." (*Id.* at 3 (emphasis in original).) Concerning the ALJ's consideration of Dr. Knox's opinion, Plaintiff argues that:

> The rationale provided by the ALJ does not support the rejection of Dr. Knox's opinion. Plaintiff's mood and affect were inconsistent with Dr. Knox's diagnosis of Bipolar I Disorder-Manic. The ALJ did not sufficiently consider the significantly abnormal findings and behaviors well documented by Dr. Knox. . . .
> The ALJ's erroneous rejection of Dr. Knox's opinion was not harmless. Dr. Knox opined that Plaintiff had "marked" limitation in responding appropriately to usual work situations and to changes in a routine work setting, which is not addressed in the ALJ's RFC. His finding that Plaintiff was "very off task[,]" even in clinical testing was not addressed by the ALJ but important in the context of the witness's testimony that 20% off task behavior precluded employment.

(*Id.* at 7 (internal citations omitted).)

3

As to the ALJ's consideration of Dr. Madkaiker's opinions, Plaintiff asserts that the ALJ's rejection of his opinion due to the absence of depression is flawed due to Plaintiff's predominant symptoms of mania and anxiety. (*Id.* at 9.) Regarding the ALJ's consideration of the State agency reviewing consultant's opinion, Plaintiff asserts that the medical consultant's opinion that he is "'not disabled' is evidence that is inherently neither valuable nor persuasive and should not have been considered, much less relied on" and that "[t]he ALJ's finding that the determinations of not disabled were "persuasive" is legal error." (*Id.* at 11.)

Next, Plaintiff's second issue is that the ALJ's residual functional capacity ("RFC") is unsupported by substantial evidence because his findings are undermined by conflicting rationale regarding the various medical source opinions. (*Id.* at 12.) Lastly, Plaintiff argues that the ALJ erroneously rejected Plaintiff's subjective allegations. (*Id.* 20.)

As to the ALJ's consideration of Dr. Knox's opinions, Defendant responds that Plaintiff "misstates" the ALJ's findings. (Doc. 22 at 8.) Defendant further responds that the ALJ's consideration of the medical opinions and prior State agency medical findings meets the threshold for evidentiary under the substantial evidence standard, which is "not high." (*Id.* at 11 (internal citations omitted).) The Court agrees with Plaintiff on the second issue; therefore, the remaining issues are not addressed in detail.

4

B.     The ALJ's Decision

At step one of the sequential evaluation process[3], the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since May 1, 2018. (Tr. 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: "bipolar disorder, major depressive disorder, posttraumatic stress disorder ("PTSD"), generalized anxiety disorder, and paranoid schizophrenia." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) With regard to whether Plaintiff met the criteria of listings 12.03, 12.04, 12.06, and 12.15, the ALJ explained:

> In understanding, remembering[,] or applying information, the claimant has a moderate limitation. The claimant alleged that he has difficulty following instructions, completing tasks, paying bills, and taking medications without reminders. However the claimant also stated that he could perform simple maintenance, prepare meals, go to doctor's appointments, take medications, shop, drive, and read. . . .
>
> In interacting with others, the claimant has moderate limitations. Here, the claimant alleged that he had difficulty getting along with others, dealing appropriately with authority, and spending time in crowds. However, according to his statements, the claimant is also able to get along with others, shop, spend time with friends and family, attend church, and live with others. . . .

---

[3] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

> The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has moderate limitations. The claimant contended that he has limitations in concentrating generally, focusing generally, following instructions, completing tasks, and maintaining a regular work schedule. On the other hand, the claimant said that he is also able to drive, prepare meals, watch [television], read, use the internet, handle his own medical care, and attend church. Additionally, the record fails to show any mention of distractibility and an inability to complete testing that assesses concentration and attention. . . .
>
> Finally, the claimant has moderate limitations in his ability to adapt or manage himself. . . .

(Tr. 18-19.)

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, except:

> The claimant must avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery. He must never climb ladders, ropes[,] or scaffolds. The claimant can perform simple, routine tasks for two-hour blocks of time with normal rest breaks during an eight-hour work-day. He can perform low-stress work, defined as occasional decision-making and occasional changes in the work setting. He can have occasional interaction with the general public.

(*Id*. at 19.)

In determining the RFC, the ALJ discussed the evidence of record and "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 20.) The ALJ summarized Plaintiff's testimony as follows:

6

> Born on December 5, 1957, the claimant is a sixty-three year-old male, with a college education, alleging disability based on the above listed impairments, and as discussed herein. The claimant testified that he was fired on May 1, 2018[,] because of his attitude and he was told he was harassing customers. He has problems with PTSD, depression, panic attacks[,] and anxiety and difficulty dealing with people. He has problems dealing with crowds, close friends[,] and family. He gets agitated depending on his mood. During a typical day, he does household chores, cooking, cleaning, laundry, uses a computer, drives and grocery shops. He has not been in the hospital for mental health reasons since 2011. He has difficulty following instructions sometimes. The claimant testified that he was easily irritated about even very small things.

(*Id.*)

Then, the ALJ determined that although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22.) The ALJ explained that the "objective findings [were] not consistent with the alleged incapacitating impairments and indicate[d] the claimant's impairments may not be as severe or debilitating as alleged." (Tr. 23.) Specifically, the ALJ discussed Plaintiff's mental status exams, which revealed the claimant to have pressured speech and anxious mood with some impairment of concentration, but also revealed no acute distress, his mood was stable, his affect was

appropriate . . ." (Tr. 22.)  Next, beginning with Dr. Buckley, the ALJ discussed the consultative examiners' opinions as follows:

> On December 3, 2011, consultative examiner, Dr. Buckley, opined the claimant was able to perform detailed and complex tasks as well as simple and repetitive tasks, he was able to maintain regular attendance[,] and was not limited in performing work activities on a consistent basis without additional supervision, he was not limited in completing a normal workday without interruptions, he was not limited in accepting instructions from supervisors, he was not limited in interacting with coworkers and the public and he was not limited in dealing with usual work stresses encountered in competitive work.  This opinion is persuasive to establish that the claimant's symptoms are controllable on medications, he improved following his remote hospital admission and remote manic episode and that he returned to functioning normally.  This was supported by explanation and a thorough evaluation showing euthymic mood, intact thought process and content, no impulsivity and no paranoia or psychotic behavior as well as intact cognition.  However, this opinion is remote in time to the period at issue, and the current records demonstrate that the claimant does have some limitations, albeit not as severe as those he alleges, that would be more consistent with a limitation to simple, routine tasks with limited social interactions.
>
> On August 15, 2019, consultative examiner, Dr. Knox, opined the claimant had no significant impairment in IQ, he had mild limitation in carrying out simple instructions, moderate limitation in making judgments on simple decisions, marked limitations with complex instructions, marked social limitations and marked limitations in responding to changes in the work setting.  He has significant limitation in concentration and persistence[,] and he was not capable of managing his own funds.  This is not persuasive as it was supported by a one[-]time evaluation showing that the claimant had some impairment of speech and concentration[,] but this improved throughout the evaluation and his thought content was normal, his mood and affect were normal and his memory was intact.  This is not consistent with the treatment records showing that the

8

> claimant's symptoms improved with medications and his other mental status exams of record showing normal mood and affect, with no anxiety or depression. Treatment notes indicate that the claimant's symptoms are controlled [,] and he is functioning well. Finally, this is not consistent with the claimant's daily activities, including his ability to drive, go shopping in stores, perform household chores and attend to his doctor's appointments.

(Tr. 24 (internal citations omitted).)

Additionally, the ALJ discussed Dr. Satyen Madkaiker' s opinions as follows:

> On February 21, 2020, Dr. Satyen Madkaiker opined the claimant had moderate limitations in understand[ing] simple instructions, marked limitations in sustained concentrations and persistence, marked limitation in social interaction and marked limitations in adaptation and he would miss at least 20% of the workday and 25-30 work days per month. This opinion is not persuasive as it is not supported by sufficient explanation to support such extreme limitations nor is it supported by this provider[']s own treatment notes indicating that his symptoms are overall controlled on medication and he functions well with a stable mood. His treatment records show mental status exams [indicate] an anxious mood with pressured speech but normal attention, concentration, and attention with intact thought process and content, fair judgment and insight, no suicidal or homicidal ideation and no other noted abnormalities. Moreover, this is not consistent with other evidence of record to be controlled on medications, with no anxiety or depression noted on exams. This is not consistent with his daily activities, including his ability to drive, go shopping, go to doctor's appointments, and go to church. Such extreme limitations are overstated and as such appear to be based on the claimant's reports alone, [rather] than the result of objective exams. Therefore, they are of little probative value.

(Tr. 24-25 (internal citations omitted).)

The ALJ found the State Disability Determinations ("DDS") medical consultant's conclusions that Plaintiff is "not disabled" to be generally persuasive. (Tr. 25.) The ALJ explained:

> Specifically, DDS at the initial level determined that the claimant was limited to simple routine tasks but could interact appropriately with the public. This is partially persuasive. A limitation to simple routine work is consistent with the claimant[']s history of mental health issues with ongoing treatment for same[,] but with improvement of symptoms on medication. This takes into account some ongoing notes of anxiety. Additionally, having had the benefit of subsequent evidence, [I] have determined the claimant to have greater limitations associated with ongoing stressors and limited him to low-stress working environment and further accounted for side effects of his own medications. . . .

(*Id.*)

Then, at step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 26.) At the fifth and final step of the sequential evaluation process, considering Plaintiff's age, education, work experience, RFC, and the VE's testimony, the ALJ determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform such as, hand packager, laundry worker, and kitchen helper. (Tr. 26-27 (also stating that all of these representative occupations are medium jobs with a specific vocational preparation ("SVP") of 2).) Therefore, the ALJ concluded that Plaintiff was not disabled from May 1, 2018 through March 8, 2021. (Tr. 27.)

## C. Relevant Evidence of Record

### 1. Dr. Buckley's Consultative Psychiatric Evaluation

On December 3, 2011, Plaintiff presented to Dr. Sean F. Buckley for a comprehensive psychiatric evaluation. (Tr. 593.) Dr. Buckley summarized Plaintiff's identifying information, source of information, his review of Plaintiff's medical records, and history of mental illness. (Tr. 593, 595.) Concerning Plaintiff's mental status, Dr. Buckley noted:

> The claimant was neat and appropriately dressed. He had fluid movement. He maintained good eye contact. He was pleasant and cooperative. He was forthcoming. There was no evidence of psychomotor agitation or retardation. There was no evidence of exaggeration or manipulation during the exam.
>
> The claimant's thought process was logical and goal directed. No tangentiality, flight of ideas or distraction.
>
> The claimant's thought content was negative for hallucinations, delusions, suicidal or homicidal ideation. There was no evidence of response to internal stimuli.
>
> The claimant's mood was euthymic at today's visit. He was able to smile frequently.
>
> The claimant's speech was of normal rate and volume.
> . . .
>
> This claimant seemed to have experienced a severe manic episode that became psychotic in nature this past summer. However, he is currently treated with Lithium and Risperdal and most of those symptoms seem to have resolved to me. The claimant did not appear paranoid or psychotic. There has been no recent impulsive behavior. He did not report being irritable at home with family. Cognitively[,] he seems relatively well.

(Tr. 596-598.)  Concerning Plaintiff's prognosis, Dr. Buckley opined that Plaintiff's "condition is expected to improve within the next 12 months as more time on mood stabilizers will likely result in even better control of symptoms[,] including residual insomnia."  (*Id.* at 598.)  Lastly, based upon the examination performed as of December 3, 2011, Dr. Buckley noted the following functional capabilities:

1. Able to perform detailed and complex tasks, is able to perform simple and repetitive tasks.
2. Able to maintain regular attendance.
3. Not limited in performing work activities without additional or special supervision.
4. Not limited in performing work activities without additional or special supervision.
5. Not limited in completing a normal workday or work week without interruptions resulting from any psychiatric conditions (auditory hallucinations or paranoia).
6. Not limited in accepting instructions from supervisors.
7. Not limited in interacting with coworkers and the public.
8. Not limited in dealing with the usual stresses encountered in competitive work.

(*Id.*)

### 2. Dr. Knox's Consultative Psychiatric Examination

On July 29, 2019, Plaintiff presented to Dr. Peter Knox, Psy., M.D. for a general clinical evaluation with mental status.  (Tr. 820.)  In the areas of understanding, remembering, and carrying out simple instructions, Dr. Knox indicated that Plaintiff had mild limitations.  (Tr. 821.)  Regarding Plaintiff's ability to make judgments on simple work-related decisions, Dr. Knox

indicated that Plaintiff had moderate limitations.  (*Id.*)  Dr. Knox then indicated that Plaintiff had marked limitations as it concerns Plaintiff's ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions.  (*Id.*)  In support of his assessment, Dr. Knox wrote, "at the time [of] the exam[,] he was very manic, off task, and it would be hard for him to make rational decisions."  (*Id.*)

Concerning Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public, Dr. Knox indicated marked limitations throughout.  (Tr. 822.)  In support of this assessment, Dr. Knox wrote, "as noted, this man is very manic and he has rapid mood swings and would have great difficulty in interacting with others."  (*Id.*)  Dr. Knox's mental status findings were as follows:

> Mood and affect: Mr. Tecson's mood appeared euthymic and he had a very high rate of energy.
>
> Quality of thinking: There was indication of tangential and circumstantial thinking.  He had a rapid speech, and rambled with this writer asking him to quit talking and gather his thoughts, as it was very hard to follow his thought process.  After about ten minutes, he was able to slow himself down to the point he could be understood.
>
> Concentration: Mr. Tecson could count backwards from twenty to one with no errors.  He could easily say his ABC's [sic].  He could count by threes from one to thirty-seven with no major problems, but as noted at first he was very off task.

13

> Orientation to Time, Place, Person, and Purpose: He was oriented as to time, place, person, and purpose. . . .

(Tr. 826-827.) Then, Dr. Knox also noted that Plaintiff has a driver's license and that he arrived to the appointment early "running in the hall, saying he [had] an appointment at two or three (3:30 actually)." (Id. at 827.) Finally, Dr. Knox opined that Plaintiff's prognosis was "[p]oor at [that] time." (Tr. 828.)

### 3. Satyen Madkaiker, M.D., Treating Psychiatrist

Since May 26, 2006, Plaintiff has been treating with Dr. Satyen Madkaiker. (Tr. 978.) On Plaintiff's Mental Residual Functional Capacity Assessment questionnaire, dated February 26, 2020, Dr. Madkaiker opined that Plaintiff's prognosis was "poor to fair." (*Id.*) In all but one category (ability to remember very short and simple instructions), which was indicated to be moderate, Dr. Knox designated either marked or extreme limitations in Plaintiff's functioning assessment. (Tr. 979-981.) Then, Dr. Madkaiker noted that Plaintiff's mental impairment would substantially interfere with his ability to work on a regular and sustained basis at least 20% of the time, and that he would miss work 25-30 days per month due to his mental impairment. (Tr. 981.)

During a telepsychiatry follow-up visit on July 27, 2020, Plaintiff reported that his symptoms are controlled; denied any recent changes or side

effects; and described his mood as stable. (Tr. 1022.) Dr. Madkaiker noted that Plaintiff's concentration was intact, his appearance was neat and clean, and that his speech rate was pressured. (*Id*.) On November 27, 2020, Plaintiff again appeared for a telepsychiatry follow-up visit with Dr. Madkaiker. (Tr. 1020.) The follow-up notes from this visit were identical to the notes from the July 27, 2020 visit. (*See* Tr. 1020-21.)

### 4. State Agency Non-Examining Consultants

On February 13, 2012, after reviewing the records available as of that date, D. Lam, Ph.D. concluded that Plaintiff was not disabled. (Tr. 124.) On June 11, 2018, Damarys Sanchez Ph.D. conducted a review of Plaintiff's psychiatric medical history and provided a mental RFC assessment. (Tr. 137.) Dr. Sanchez's mental RFC noted that Plaintiff had understanding and memory limitations but was not significantly limited in remembering locations and work-like procedures; understanding and remembering very short and simple instructions; and understanding and remembering detailed instructions. (*Id*.) Regarding Plaintiff's sustained concentration and persistence limitations, Dr. Sanchez noted that Plaintiff was not significantly limited in the ability to: carry out very short and simple instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work in coordination with others without being

distracted; and make simple, work-related decisions. (Tr. 138.) Regarding Plaintiff's ability to maintain attention and concentration for extended periods of time, Dr. Sanchez noted that Plaintiff was moderately limited. (*Id.*)

### D.   Analysis

The Court agrees with Plaintiff that the ALJ's RFC determination was unsupported by substantial evidence.[4] In reaching an RFC determination, an ALJ must consider how a claimant's mental impairments affect the claimant's ability to work. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–70 (11th Cir. 2019)[5]. In *Samuels v. Acting Comm'r of Soc. Sec.,* 959 F.3d 1042, 1047 (11th Cir. 2020), the Eleventh Circuit specifically noted that the ALJ failed to "account for unexcused absences or time spent off-task, which were limitations caused by [the claimant's] bipolar disorder that were reflected in the record." *Samuels,* 959 F.3d at 1047. The Court remanded, instructing the Commissioner to "account for the episodic nature of [the

---

[4] Defendant's responses generally consisted of summarizing the ALJ's decision, arguing that substantial evidence supports the decision, and that the ALJ does not need a medical opinion to make a mental RFC determination. (Doc. 22 at 17-19.)

[5] To the extent the *Schink* ruling was based on the prior regulatory standards concerning opinion evidence, the Court does not rely upon that portion. However, where the opinion concerns how a claimant's mental impairments affect their ability to work, the Court finds this language relevant here.

16

claimant's] bipolar disorder in determining her RFC and whether there are jobs in the national economy that [the claimant] can perform." *Id.*

Here, the ALJ found that Plaintiff's bipolar disorder, and other mental illnesses, were "severe" impairments, that "significantly limit the ability to perform basic work activities." (Tr. 17.) The ALJ found that Plaintiff had moderate limitations in interacting with others and as well as concentrating and persisting. (Tr. 18.) However, in his RFC determination, the ALJ failed to properly consider some of the limitations caused by Plaintiff's bipolar disorder. Specifically, the ALJ failed to consider whether Plaintiff would miss any days of work, account for any limitations in encounters with co-workers or supervisors, as well as off task behavior. On this record, this failure is error.

Moreover, there is evidence in the record that Plaintiff's mood and bipolar episodes are not always controlled on medications. (*See* Tr. 822 (noting, as of July 2019, "this man is very manic and he has rapid mood swings and would have great difficulty in interacting with others."); *see also* Tr. 60 (testifying that even when taking medications he still experiences panic attacks that can last approximately thirty minutes).) Further, Plaintiff testified that he was fired from his most recent security job in 2018 due to him harassing the customers. Although the ALJ did limit Plaintiff to "occasional interaction with the general public," this does not speak to

17

interactions with co-workers, supervisors, limitations for off-task behavior, and potential absences stemming from manic episodes.

At the hearing, the ALJ asked the VE how being off task 20% of the day would affect the available jobs to which the VE replied "[n]o. That level of off task behavior would not be tolerated." (Tr. 75.)  Similarly, the ALJ asked:

> Q.   [Allright].  And then for a variety of reasons, and even if you know, someone is being told not to come into work, if we're missing three days of work per month—miss three days of work per month—we could add that to [hypothetical one or two]— would there be any jobs?
>
> A.   No.

(Tr. 75-76.)

The VE clearly stated that missing three days of work per month would preclude any jobs, but the ALJ did not discuss or account for this in his RFC determination.  Furthermore, there is no logical bridge between the ALJ's finding that Plaintiff had moderate limitations in all functional areas and his RFC determination.  The ALJ's reliance on Plaintiff's activities of daily living does not paint a complete picture as to the day-to-day functions and stresses of a work environment, particularly where interactions with co-workers and authoritative figures are involved.  Cooking, caring for his pet, watching television, and reading are primarily solitary activities, which do not speak to Plaintiff's ability to interact with others well.  While it is undisputed that Plaintiff attends church, which involves some level of interaction with others,

18

Plaintiff did admit that his interactions depended upon his mood. (*See* Tr. 64; *see also id.* (testifying that sometimes his mood gets so bad he wants to hurt someone).) Notably, attending church and being cooperative in a clinical setting (both familiar settings to Plaintiff), does not logically lend support for what would occur if Plaintiff were to have a manic episode at work, be off task, or be absent several days a month due to his bipolar disorder.

### III.   Conclusion

Based on the foregoing, the limiting effects of Plaintiff's bipolar disorder symptoms in assessing the RFC are not supported by substantial evidence. In light of this conclusion and the possible change in the RFC assessment for the relevant period, it is unnecessary to address Plaintiff's additional arguments. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDED** to the ALJ with instructions to: (a) re-evaluate Plaintiff's RFC assessment and (b) conduct any further proceedings deemed appropriate.

2. The Clerk of Court shall enter judgment accordingly, terminate any other pending motions, and close the file.

3. The judgment should state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any § 406(b) or § 1383(d)(2) fee application must be filed within the parameters set forth by the Standing Order on Management of Social Security Cases entered in *In re: Administrative Orders of the Chief Judge*, Case No.: 3:21-mc-1-TJC (M.D. Fla. Dec. 7, 2021).

**DONE AND ORDERED** at Jacksonville, Florida, on September 28, 2022.

*[signature]*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record